UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-cv-80958-AMC

TERCILMENE MONERA,

    Petitioner,

v.

EVENS DATIS,

    Respondent.

_____/

**PETITIONER'S MOTION TO PERMIT
REMOTE TESTIMONY AT EVIDENTIARY HEARING**

Tercilmene Monera ("Petitioner" or "Mother"), pursuant to Federal Rule of Civil Procedure 43, files this Motion to Permit Remote Testimony at Evidentiary Hearing ("Motion"). Petitioner respectfully seeks an order that (1) grants Petitioner's request for her to participate and testify at the November 14-15, 2024 evidentiary hearing ("Evidentiary Hearing") by Zoom because she has been unable to obtain a visa to travel from Brazil to Fort Pierce, Florida; and that (2) grants Petitioner's request for any fact witnesses listed on Petitioner's witness list who do not live in Florida to appear and testify at the Evidentiary Hearing by Zoom. As explained below, and pursuant to Federal Rule 43, the inability to come to the Florida based on immigration policies and cost are compelling and exceptional circumstances allowing the Court to permit remote appearances and testimony. Restricting Petitioner and her witnesses who are not located in Florida (and cannot get to Florida for the Evidentiary Hearing) from remote testimony while permitting Respondent—who is alleged to have abducted the Child and entered the United States illegally—and his witnesses who are located in Florida to testify merely because they are located in Florida already would be extremely prejudicial to Petitioner. In support, Petitioner states:

**I.      BACKGROUND**

1. On August 7, 2024, Petitioner filed her Verified Petition ("Petition") seeking return of her daughter, H.E.D. ("Child"), to Brazil as a result of the wrongful removal and retention of the Child by the Respondent, Evens Datis ("Respondent" or "Father"). [ECF No. 1].

2. When the Petition was filed, Petitioner was legally in Brazil and not the United States, but did not have a valid passport. At a status conference hearing on August 20, 2024, Petitioner's counsel informed the Court that Petitioner was located in Brazil. [ECF No. 18]. On August 21, 2024, the Court issued an Order Scheduling Evidentiary Hearing and Requiring Joint Trial Plan that ordered the parties and witnesses to appear in person and ordered Petitioner to update the Court on the status of Petitioner obtaining a visa. [ECF No. 20].

3. On September 30, 2024, the Parties submitted their Joint Scheduling Report where Petitioner also updated the Court on the status of her obtaining a visa. [ECF No. 37]. Petitioner obtained her Brazilian passport on September 26, 2024 and got a visa appointment for November 1, 2024, which was the earliest date available at the time. *Id.* Petitioner's counsel simultaneously worked with the U.S. Department of State's Brazil Country Officer to assist.

4. On October 3, 2024, this Court entered the Order Rescheduling Evidentiary Hearing rescheduling the Evidentiary Hearing in this matter to November 14–15, 2024 at 9:00 A.M. as a result of Petitioner's status update that her visa appointment was November 1, 2024. [ECF No. 39]. The order also required Petitioner and all remaining witnesses to appear at the evidentiary hearing in person, absent compelling circumstances. *Id.* That same day, Petitioner filed a Visa Status Appointment Update informing the Court that Petitioner was able to re-schedule her visa appointment to October 4, 2024. [ECF No. 41].

5. On October 4, 2024, Petitioner attended her visa appointment and was denied, and

an update was provided to the Court. [ECF No. 44]. Petitioner further requested the Court's guidance going forward if the Court is able to assist with the visa application. *Id.*

6. On October 14, 2024, Petitioner filed another Visa Application Status Update and requested a Case Management Conference to discuss the visa concern with the Court. [ECF No. 45]. Specifically, Petitioner could not obtain a second appointment for a visa application until the first appointment results (denial) were updated in the electronic system. *Id.* In the meantime, counsel requested a conference with the Court because the Petitioner's visa was denied as a result of her ties to Brazil, which will not change before the second visa appointment. *Id.*

7. Counsel is waiting on the Court to schedule a Case Management Conference.

8. Like Petitioner, Petitioner's fact witnesses are Petitioner are not located in the United States. Of the five witnesses Petitioner plans to put forth at the Evidentiary Hearing, four of them are located in Brazil and one of them is located in France. [ECF No. 38]. It is unclear whether any of the five fact witnesses will be able to obtain a visa to the United States (especially because Petitioner herself—as the petitioner in this lawsuit—was unable to obtain a visa to date); and they cannot afford to travel to the United States.[1] Traveling to the United States requires not only a visa, but also paying for flights and hotels, and taking off time from work.

9. As outlined below, there is "good cause and compelling circumstances" to permit Petitioner and Petitioner's third-party fact witnesses to participate and testify by contemporaneous video transmission at the Evidentiary Hearing, pursuant to Federal Rule of Civil Procedure 43.

10. Respondent will not be prejudiced by Petitioner's request. Contrarily, Petitioner will be extremely prejudiced if she and her fact witnesses are unable to testify remotely at the

---

[1] Petitioner herself also cannot afford the travel and Petitioner's lawyers, who have taken her case pro bono, agreed to cover her travel costs if she can get passed the immigration hurdle.

3

Evidentiary Hearing, especially considering that Respondent came to the United States illegally and should not be able to benefit from that merely because he is physically in the United States and Petitioner, who is trying to come legally, is being estopped from doing so.

11. Petitioner files this Motion requesting that Petitioner and all fact witnesses located outside the United States be able to participate and testify at the Evidentiary Hearing by Zoom or other contemporaneous video transmission.

**II.    SCOPE OF THE TESTIMONY, COMPELLING CIRCUMSTANCES, GOOD CAUSE, AND PROCEDURAL SAFEGUARDS**

12. Petitioner is a Haitian national living in Brazil with no ties to the United States.

13. Petitioner applied for a visa to permit her travel to the United States to attend the Evidentiary Hearing in-person, in accord with this Court's orders, after securing a valid Brazilian passport. Petitioner interviewed at the U.S. Consulate General in São Paolo on October 4, 2024. During the interview, Petitioner cited her family and friends in Brazil, her current employment, and her current residence as her ties to Brazil, compelling her return after traveling to the United States. Petitioner explained that her travel to the United States is for the specific purpose of attending the Evidentiary Hearing and securing the return of her Child to Brazil for Brazil to conduct the custody proceedings. In addition, undersigned counsel and Petitioner's Brazilian counsel co-drafted a letter to the Consulate General to provide financial assurances associated with the cost of travel.

14. Despite Petitioner's explanation of the circumstances motivating her travel and the additional assurances offered by Petitioner's counsel, Petitioner's **visa application was denied**. The denial letter provided to Petitioner explained that Petitioner's visa application was denied for Petitioner's failure to demonstrate she has ties that will compel her to return to Brazil after her travel to the United States. A true and correct copy of the denial letter is attached as **Exhibit 1**.

15. Accordingly, Petitioner—who is trying to come into the United States legally to attend the Evidentiary Hearing—cannot get a visa to legally travel to the United States. At the time of filing this Motion, Petitioner submitted a second application for a visa and secured the first available appointment for an interview on December 3, 2024. Unfortunately, Petitioner's ties to Brazil compelling her return, which the U.S. Consulate cited as the reason for denying her visa, will not change prior to the second appointment. As such, Petitioner is concerned that her second application will be denied for the same reasons that the first application was denied and that Petitioner will not be able to obtain a visa at all.

16. Petitioner's third-party fact witnesses, identified in the Joint Scheduling Report [ECF No. 38], are not located in the United States and, in light of the U.S. Consulate's denying Petitioner's visa, it is unlikely that Petitioner's third-party fact witnesses will be successful in obtaining a visa. Furthermore, while Petitioner's counsel has agreed to cover the cost of her travel to the United States if she can obtain a visa, the third-party fact witnesses do not have the same financial assistance and cannot afford to apply for and travel to the United States for the Evidentiary Hearing. Specifically, each application for a visa costs about $250 and the applicants have to take off work to attend the visa appointments, which means they do not get paid. Further, if the visas were approved, the third-party fact witnesses would then need to take off work to travel to the United States to give testimony and they would need to pay for flights[2] and hotels in Florida.

17. As requested in the Petition, and as referenced in the pleadings docket, pursuant to Court policy, petitions under the Hague Convention and the International Child Abduction Remedies Act ("ICARA") should be resolved within six weeks from the initial filing of the petition. [ECF No. 1].

---

[2] Based on a quick review, round trip flights from Brazil to Florida cost roughly $720.

18. Petitioner's inability to travel to the United States has already delayed proceedings in this case and jeopardized the Court's expedited review because the Evidentiary Hearing was initially scheduled for October 29, 2024 and was re-scheduled to accommodate Petitioner's first visa application interview. Petitioner does not want her inability to travel to the United States to cause further delay.

19. Petitioner is entitled to her day in Court—whether physically or remotely—and given that she cannot obtain legal clearance to enter the United States, she should not be prejudiced by not being allowed to testify remotely.

20. Similarly, Petitioner should not be prejudiced by her fact witnesses not being allowed to testify remotely. While Petitioner's witnesses will testify about highly relevant information, their testimony is significantly limited in scope and is anticipated to take less than thirty (30) minutes to one (1) hour each (for direct *and* cross examination). The actual testimony will likely be shorter, but the Parties are accounting for translation times because the testimony will need to be translated.

21. To require these non-party witnesses to apply for and try to obtain visas; fly roundtrip from Brazil to Florida; pay for airfare, lodging and food while in Florida for two or three days while waiting to testify; take off work for several days (if they even can) and rearrange their personal schedules so that they can testify in person, instead of by readily-accessible remote means, when their testimony is expected to take less than one (1) hour, is placing an undue, unreasonable burden on these non-party witnesses and severely prejudices Petitioner who does not have anyone physically in Florida to testify and support her case.

22. The seriousness and importance of this proceeding is understood by all. The non-party out-of-state witnesses are voluntarily appearing to testify in this proceeding to provide the

Court with their firsthand accounts of Mother's and Father's intentions regarding the Child. Similarly, the testimony of Petitioner's Brazilian counsel is vital to this proceeding as this testimony will be Petitioner's only evidence regarding Brazilian law as applied to this case. To exclude these witnesses from testifying because they cannot appear live would be a miscarriage of justice and highly prejudicial to the fair resolution of this proceeding—in which a young child's future hangs in the balance.

23.  Counsel for the Petitioner can and will put into place procedural safeguards to ensure the usefulness of the video transmission testimony. Undersigned counsel have conducted testimony by telephone and video transmission in previous cases and are experienced in liaising with the Court's IT Department and ensuring that technical and logistical arrangements are timely made so that the transmission testimony proceeds during the Evidentiary Hearing. Furthermore, undersigned counsel has co-counsel in Brazil who can assist with safeguards regarding testimony from Brazil.

24.  Based on the foregoing, Petitioner has demonstrated good cause and compelling and exceptional circumstances to permit Petitioner and all of her third-party fact witnesses outside the United States (including, Adriana Pires Gentil Negrão, Carla Viana, Clermithe Monera, Yves Line Monera, and Roland Saintivers) to appear and testify remotely at the Evidentiary Hearing.

**III.    LEGAL BASIS FOR REQUEST**

25.  Federal Rule of Civil Procedure 43(a) addresses testimony by transmission:

> (a) In Open Court. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a).[3]

26. Here there exists "good cause in compelling circumstances" to permit the Mother and the witnesses to testify by video and/or remote teleconferencing.

27. First, as fully explained above, Petitioner and all of her witnesses are located outside of the United States and are not likely to be permitted into the United States. The Petitioner has already applied for a visa once and was denied for an alleged lack of ties compelling her return to Brazil. Given that the Petitioner was denied her visa, it is unlikely that the third-party fact witnesses would be approved for a visa (if they could afford to apply and come to the United States if granted). Additionally, the witnesses are unable to financially afford to pay the expenses for travel from Brazil to the United States to testify. Whereas Petitioner has her pro bono legal counsel covering her travel costs (if she can get a visa), the third-party fact witnesses do not have the same convenience and cannot afford to come to the United States to testify.

28. Second, there is technology available in the courtroom to take the contemporaneous video or telephone transmission testimony. Compelling the Petitioner and witnesses to travel to Florida from Brazil to testify would be unreasonably burdensome and disproportionately expensive to the parties and the witnesses in the circumstances of this case.

29. Third, the Hague Convention text and policy requires courts in Hague Convention proceedings to adopt and apply the most expeditious mechanisms and remedies available. Convention, art. 2; *see also Chafin v. Chafin*, 133 S.Ct. 1017, 2021 (2013). The most expeditious and proportionate method for this Court to receive the testimony of the witnesses outside of the United States is by contemporaneous video transmission testimony.

---

[3] The final Evidentiary Hearing is just that, an evidentiary hearing and not trial. Federal Rule 43(a) specifies "trial."

30. Fourth, numerous United States District Courts, including Your Honor, have approved of and employed contemporaneous video transmission testimony in cases involving international witnesses. By way of example, the United States District Court for the District of Maryland considered the rule on transmission testimony in *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479-80 (D. Md. 2010). There, the district court, in a jury trial, ruled that certain plaintiffs would be permitted to testify from Honduras by video conference for the jury. *Id.* Here, the Court is conducting an expedited bench trial and the request is that a Petitioner and witnesses be permitted to testify by video.

31. In *Lopez* the district court explained:

> Despite videoconferencing's deficiencies,[4] courts in this circuit and elsewhere have approved or affirmed its use in the civil context. *See generally Rusu v. INS*, 296 F.3d 316 (4th Cir. 2002) (asylum proceeding); *United States v. Baker*, 45 F.3d 837 (4th Cir. 1995) (civil commitment hearing); *Edwards v. Logan*, 38 F.Supp.2d 463 (W.D. Va. 1999) (civil rights action); see also *In re Merck Prods. Liab. Litig.*, 439 F.Supp.2d 640, 642 (E.D. La. 2006) (listing cases). These cases reflect a "consistent sensitivity to the utility of evolving technologies that may facilitate more efficient, convenient, and comfortable litigation practices." 9A Wright & Miller, Federal Practice & Procedure § 2414 (3d ed. 2008).
>
> . . .
>
> In this case, Plaintiffs have demonstrated good cause as to those Plaintiffs residing in Honduras. The cost of international travel can provide good cause for contemporaneous transmission of testimony. *See, e.g.*, *Dagen v. CFC Grp. Holdings*, No. 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003). In some cases, travel cost and inconvenience have justified contemporaneous transmission even when the parties where located within the United States, in contrast to the internationally resident Honduran Plaintiffs in this case. *See, e.g.*, *Beltran–Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000) (affirming use of telephonic testimony for hearing in California where witness was in Missouri); *Scott Timber, Inc. v. United States*, 93 Fed.Cl. 498, 499–501 (2010) (approving use of videoconferencing for trial in Washington, D.C., where witness was in Oregon); *Fed. Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (finding good cause for videoconferencing where witness was in Oklahoma and

---

[4] This opinion is dated in 2010 and, fourteen years later, videoconferencing has improved significantly.

> hearing was in Washington, D.C.). Forcing the Honduran Plaintiffs in this case to travel to the United States would impose substantial inconvenience and cost on persons with strikingly few financial resources. (Paper 76–1). When viable alternatives like videoconferencing are available, compelling individuals who make no more than $7,000 a year to travel hundreds of miles seems fundamentally unjust. And although the court sympathizes with Defendants' claim that this litigation has already imposed substantial costs on them as well (Paper 75, at 4–5), those costs do not justify imposing needless expense on Plaintiffs.

748 F. Supp. 2d at 480.

32. Since the pandemic, the Southern District of Florida has permitted witnesses to appear at trial via remote videoconference. *See e.g.*, *Colon v. Mejia Montufar*, No. 2:20-cv-14035-KMM, [ECF No. 39]; *Radke v. NCL (Bahamas) Ltd.*, No. 1:19-CV-23915, [ECF No. 45]; *In re F.S.R.G.*, 1:21-cv-81573-CANNON [ECF No. 29].

33. Contemporaneous transmission by means of video teleconference provides a sufficient medium for the court to determine the credibility of the witness. *See, e.g.*, *Federal Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 4 (D.D.C. 2000) ("there is no practical difference between live testimony and contemporaneous video transmission based upon my experience in presiding over two hearings"); *see also Walker v. Walker*, No. 11 C 2967, 2013 WL 1110876, at *2 (N.D. Ill. Mar. 16, 2013) ("The Court also heard further testimony from [Petitioner] (who testified under oath by video from Australia . . ."); *Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 865 (N.D. Ill. 2001) ("[Petitioner] remained in this country from October 20 through October 31 (T. 356), but gave testimony in this case by telephone after his return to Italy.").

34. International travel in and of itself is good cause in compelling circumstances to grant this motion. *See Lopez*, 748 F. Supp. 2d at 479 (citing *Dagen v. CFC Grp. Holdings*, 2003 WL 22533425 at *2 (S.D.N.Y. Nov. 7, 2003)) ("cost of international travel can provide good cause for contemporaneous transmission of testimony").

35. This case meets all of the criteria for this Court to find good cause and compelling

10

and exceptional circumstances to permit the Petitioner and all of Petitioner's witnesses outside the United States to testify by contemporaneous video transmission. And as fully explained above, undersigned counsel has proposed reasonable, proportionate, and sufficient safeguards with respect to the requested telephone or video transmission testimony.

### IV. CONCLUSION

**WHEREFORE**, Petitioner, Tercilmene Monera, respectfully requests that the Court permit the Petitioner and all of Petitioner's third-party fact witnesses who reside outside of the United States (including, Adriana Pires Gentil Negrão, Carla Viana, Clermithe Monera, Yves Line Monera, and Roland Saintivers) to appear and testify remotely during the Evidentiary Hearing in this action.

### LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel certifies that Counsel for Petitioner, Suzanne Busser, Esq., conferred with Counsel for Respondent, Phillip Brutus, Esq., via E-Mail on October 5, 2024, and that Mr. Brutus's client opposes the relief requested herein.

Dated: October 24, 2024

Respectfully submitted,
**HOLLAND & KNIGHT LLP**

By: s/ *Suzanne Busser*
**DAVID IRA SPECTOR** (FBN 0865401)
email: david.spector@hklaw.com
secondary email: kim.roark@hklaw.com
**SUZANNE M. BUSSER** (FBN 1002654)
email: suzanne.busser@hklaw.com
**KYLEE NEERANJAN** (FBN 1050749)
email: kylee.neeranjan@hklaw.com
777 S. Flagler Drive, West Tower, Suite 1900
West Palm Beach, Florida 33401
Tel: (561) 833-2000

*Attorneys for Petitioner*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **October 24, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that I have served a copy to Respondent's counsel of record listed below.

By: ___s/*Suzanne Busser*___
SUZANNE BUSSER

Phillip J. Brutus, Esq.
Brutus Law Group
301 W. Atlantic Avenue, Suite 0-8
Delray Beach, FL 33444
Tel: 561-526-8383
Email: info@brutuslawgroup.com