**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:24-cv-80958-AMC**

TERCILMENE MONERA,

      Petitioner,

v.

EVENS DATIS,

      Respondent.

_____/

### PETITIONER TERCILMENE MONERA'S OMNIBUS MOTION IN LIMINE

Petitioner, Tercilmene Monera ("Petitioner"), by and through undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, respectfully moves this Court *in limine* to enter an Order precluding Respondent, Evens Datis ("Respondent"), Respondent's counsel, and any witnesses called by Respondent from making any mention, directly or indirectly, in any manner whatsoever as follows:

    **MIL No. 1.**    Preclude Child from Testifying;

    **MIL No. 2.**    Preclude Pre-July 2022 Photographs and Videos;

    **MIL No. 3.**    Preclude Testimony about Respondent Being a Good Father;

    **MIL No. 4.**    Preclude Child's Hearsay Statements;

    **MIL No. 5.**    Preclude Lay Opinion Testimony of Medical Diagnosis and Causation.

### I.   Preliminary Statement

This case was previously set for an Evidentiary Hearing on November 14-15, 2024, which the Court cancelled [ECF No. 53]; nevertheless, an evidentiary hearing will likely be had at a future date ("Evidentiary Hearing"). On August 7, 2024, Petitioner filed her *Verified Petition for Return of Minor Child to Brazil and Request for Issuance of Show Cause Order* ("Petition") pursuant to

the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child Abduction Remedies Act. [ECF No. 1]. In her Petition, Petitioner alleges (1) that Respondent violently abducted the Parties' then-three-year-old daughter, H.E.D. ("Child") from Petitioner, (2) that Respondent wrongfully removed the Child from Brazil, (3) that the Child's habitual residence immediately before the wrongful removal was Brazil, (4) that Respondent's wrongful removal of the Child from Brazil breached Petitioner's custody rights under Brazilian law, (5) that Respondent wrongfully retained the Child in the United States of America, and (6) that Petitioner was exercising her custody rights over the Child at the time of Respondent's wrongful removal. *Id.* Petitioner also included allegations surrounding her prior relationship with Respondent including, for example, that Respondent had physically and emotional abused Petitioner, for background to explain to the Court how the Parties' relationship fell apart.

On September 23, 2024, Respondent filed his initial *Response to Petition Petition [sic] for Return of Minor Child to Brazil* ("Response")[1] and alleged eight purported defenses to the Petition: (1) Respondent did not wrongfully detain the Child;[2] (2) grave risk of harm regarding Petitioner's neighborhood; (3) grave risk of harm regarding Petitioner's ex-boyfriend; (4) the Child is well-settled in the United States; (5) Respondent and Child are not subject to immediate removal from

---

[1] Respondent filed an Amended Response on October 14, 2024 ("Amended Response"). [ECF No. 46, 47].

[2] In this defense, Respondent appears to admit that he did detain the Child and his defense may be that doing so was not "wrongful." Specifically, Respondent states: "[Respondent] was so shocked when he found out that the child had suffered a *broken clavicle* while in the [Petitioner's] custody that he could not in good conscience return the Child to that environment without addressing Petitioner's boyfriend's violent assault on the Child. Because [Respondent] had previously planned to leave Brazil, [Respondent] had to take [the Child] with him." [ECF No. 32, 33]. Petitioner disputes that the Child suffered a broken clavicle while in her possession and disputes that her ex-boyfriend violently assaulted the Child.

the United States;[3] (6) Equitable tolling is not applicable; (7) Petitioner is not credible;[4] and (8) Respondent's due process rights are violated.[5] [ECF No. 32, 33, 34, 46, 47]. The Court is not determining custody rights. The Court is not determining immigration rights. The Court is determining whether the child should be sent back to their habitual residence so that the child's place of habitual residence may determine rights of custody. *See generally Abbott v. Abbott*, 560 U.S. 1, 9 (2010); *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1340 (S.D. Fla. 2002) (The Court "only has jurisdiction to decide the merits of the wrongful removal claim."). The only issue in this case is whether Petitioner is entitled to have the Child returned to Brazil such that a court of competent jurisdiction can determine custody. *See In re Leslie*, 377 F. Supp. 2d 1232, 1238 (S.D. Fla. 2005).

Once the Petitioner has proven all of the elements, then the Court may consider the Respondent's defenses. If the Respondent's defenses are unavailing—which they are—then the Court must rule in Petitioner's favor. However, even if the Court finds that Respondent succeeds on a defense, the Court has discretion to order the return of the Child if it would further the aims of the Hague Convention. *See Horacius v. Richard*, 2024 WL 996097, at *4 (S.D. Fla. Mar. 7, 2024).

Petitioner anticipates Respondent will seek to introduce evidence and elicit testimony that is irrelevant and/or the introduction of which would be unfairly prejudicial to Petitioner because any purported probative value would be substantially outweighed by: (1) a danger of unfair prejudice; (2) confusion of the issues; (3) unduly delaying the Evidentiary Hearing; and/or (4) wasting time. Petitioner also anticipates Respondent will seek to introduce unreliable evidence and testimony not based on personal knowledge. Respondent should be precluded from presenting this

---

[3] This is not an enumerated defense. *See* Convention Art. 13(b) & 20.

[4] This is not an enumerated defense. *See* Convention Art. 13(b) & 20.

[5] This is not an enumerated defense. *See* Convention Art. 13(b) & 20.

kind of evidence at the Evidentiary Hearing and Petitioner respectfully requests that the Court grant Petitioner's Omnibus Motion *in Limine*, and exclude such evidence and testimony pursuant to the Federal Rules of Evidence 401, 402, 403, 604, 701, 801, 802, 803, 804, and 805.

## II.   Motion in Limine No. 1: Preclude Child from Testifying

Petitioner requests this Court preclude the Child from testifying entirely (whether live or *in camera*) at the Evidentiary Hearing. The Child was three years old at the time she was abducted by Respondent and wrongfully removed from Brazil. The Child has been isolated from Petitioner for over two years and is currently five years old. The Respondent lists the Child on his witness list and includes statements in his Response indicating *how the Child will testify* at the Evidentiary Hearing,[6] but this Court should preclude the Child from testifying at the Evidentiary Hearing because the Child lacks maturity and because her statements are unreliable.

The Child should not be permitted to testify because there is no reason for the Court to receive testimony from a child unless the "mature child defense" is raised and Respondent has not raised the defense. *See, e.g., De la Riva v. Soto*, 183 F. Supp. 3d 1182, 1999 (M.D. Fla. 2016) ("A court may decline to order a child's return where the respondent shows, by a preponderance of the evidence, 'that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.'") (citations omitted). Assuming, *arguendo*, the defense was raised, which it was not, the Child was three years old when she was abducted by the Respondent on July 17, 2022 and she is currently five years old. While the Convention does not provide a specific criteria for assessing maturity, Petitioner is unable to find any case law where a court considered the testimony (whether live or *in camera*) of a five year old child who was three at the time of abduction. *See, e.g., Soto*, 183 F. Supp. 3d at 1200 (recognizing that seven is too

---

[6] *See* [ECF No. 33, ¶ 5].

young for the child's wishes to be taken into consideration); *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1259 (M.D. Fla. 2008) (finding that at seven years old, the child has not reached the age and degree of maturity); *Gallardo v. Orozco*, 954 F. Supp. 2d 555, (W.D. Tex. 2013) (Court met with eight year old child *in camera* and determined she was not of sufficient age and maturity for the Court to take into account her objection to being returned to Mexico); *contra Ago v. Odu*, 2009 WL 2169857, at *13 (M.D. Fla. July 20, 2009) (child deemed mature at fourteen years of age due to turn fifteen in less than three months).

The Child should not be permitted to testify because she has been alienated and isolated from Petitioner for over two years and there is a significant risk that Respondent has influenced her testimony. This Court should take great care to ensure that a child's preference to remain in the nonhabitual country has not been unduly influenced by the parent who currently has custody and wrongfully retained her. *See Soto*, 183 F. Supp. 3d at 1200 (recognizing that, even if the court was to take the seven-year-old child's wishes or objections into account, "the Court would have concerns that any such 'wishes' or 'objections' had been influenced, even if indirectly, by Respondent, under whose care [the child] has been living for more than two years."); *In re S.L.C.*, 4 F. Supp. 3d 1338, 1349-50 (M.D. Fla. 2014) (finding the child's opinion on returning to Mexico was not conclusive when the child was twelve years old and had been under the exclusive custody of respondent for an extended period of time; *Walker v. Walker*, 2013 WL 1110876, at *12 (N.D. Ill. Mar. 16, 2013) ("court must take care not to give significant weight to a child's views if the child has been unduly influenced by the respondent parent."). In this case, the Child has been isolated and alienated from Petitioner for over two years. Notwithstanding the fact that the Child is merely five years old, this Court should not allow her to testify.

#511746815_v4

### III.   <u>Motion in Limine No. 2: Preclude Pre-July 2022 Photographs and Videos</u>

Petitioner requests the Court exclude from the Evidentiary Hearing any of Respondent's photographs and videos that pre-date July 2022 (when Respondent wrongfully retained the Child), including, without limitation, the photographs of the "Petitioner, Respondent, and Child in amusement parks" attached as Exhibit F to the Response, the additional "pictures and videos[7] from a surprise birthday Party Respondent threw for [Petitioner] in September 2021" referenced in the Response and attached as Exhibit F, and any other photo and/or video evidence from before July 2022 ("Pre-July 2022 Photo and Video Evidence"). According to Respondent, the Pre-July 2022 Photo and Video Evidence will be used to deny Petitioner's abuse allegations against Respondent, and implies that the Pre-July 2022 Photo and Video Evidence support that Petitioner's "abuse allegations are completely false and clearly concocted as a ploy to bolster an otherwise weak petition." [ECF No. 32, 33 ¶ 16]. The Pre-July 2022 Photo and Video Evidence must be excluded from the Evidentiary Hearing because (1) the evidence is irrelevant to either the claims in the Petition or the defenses in the Response; (2) the evidence could only prejudice the Court and prolong trial; and (3) the evidence should not be permitted to divert the Court's attention from its limited review. *See* Fed. R. Evid. 401-403; *see also* ECF No. 32, 33, Composite Exhibit F; ECF No. 34, 35, 36, 37.

Petitioner's counsel anticipates that Respondent will try to use the Pre-July 2022 Photo and Video Evidence to argue that Respondent did not abuse Petitioner. The Pre-July 2022 Photo and Video Evidence is irrelevant to Petitioner's case-in-chief because it does not tend to prove or disprove that Respondent wrongfully removed the Child from her habitual place of residence

---

[7] On or around October 25, 2024, Petitioner's counsel received a USB thumb drive from Respondent's counsel with four (4) videos. Undersigned is not sure whether Respondent's counsel complied with ECF No. 37 and conventionally filed the CD-ROMs with the Clerk's Office.

immediately before the wrongful removal or whether Petitioner was exercising her custody rights under Brazilian law at the time of the wrongful removal. *See* Hague Convention, Arts. 3-4; *Gatica v. Martinez*, 2010 WL 6744790, *1 (S.D. Fla. Oct. 13, 2010); *In re Ahumada Cabrera*, 323 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004); *Spica v. Viera*, 2020 WL 13401916, *4 (S.D. Fla. June 22, 2020).

The Pre-July 2022 Photo and Video Evidence is irrelevant to any of Respondent's defenses under the Convention and must be excluded. Respondent cites to the Pre-July 2022 Photo and Video Evidence in his defense that "Petitioner is not credible." [ECF No. 32, ¶ 16]. This is not a legitimate or enumerated defense under the Convention. *See* Convention Art. 13(b) & 20; *see Soto*, 183 F. Supp. 3d at 1187, n.7 (the Court determines the credibility of the witnesses as the finder of fact). Notwithstanding, the Pre-July 2022 Photo and Video Evidence does not tend to prove or disprove Petitioner's credibility. That Respondent allegedly threw Petitioner a surprise birthday party over three years ago (in September 2021), or accompanied Petitioner and the Child to an amusement park at the end of 2022 is inconsequential to whether or not Respondent mentally or physical abused Petitioner. The mere fact that Respondent has pictures and videos with Petitioner and the Child (where the Petitioner and Child are smiling) does not prove or disprove that Respondent abused Petitioner or discredit Petitioner's credibility. Using photographs of someone smiling to prove there was no abuse is no different than a burglar using the money he steals for altruism, or a human trafficker feeding its victim. Assuming, *arguendo*, Respondent intends to use the Pre-July 2022 Photo and Video Evidence for any appropriate defenses under the Convention, the evidence must still be excluded because the evidence does not speak to either the grave risk of physical or psychological harm defense or the well-settled defense. These photos and videos prove nothing and are not relevant to this Court's analysis under the Convention.

The Pre-July 2022 Photo and Video Evidence is not relevant to any claims or enumerated

7

defense in this action and will only prejudice the Court and Petitioner, prolong trial, and divert the Court's attention from the appropriate review making it inadmissible at the Evidentiary Hearing. *See* Fed. R. Evid. 401 & 402 (To be admissible, evidence must be relevant–it must have the tendency to make the existence of any fact that is *of consequence to the determination of the action* more or less probable. Thus, evidence that is irrelevant is inadmissible.). The Court should not allow Respondent's Pre-July 2022 Photo and Video Evidence to pollute consideration of the Petition. Accordingly, Respondent should be precluded from entering into evidence or eliciting testimony regarding the Pre-July 2022 Photo and Video Evidence at the Evidentiary Hearing.

## IV.    **Motion in Limine No. 3: Preclude Character Testimony**

Petitioner requests this Court prohibit Respondent, Respondent's counsel, and/or any of Respondent's witnesses from making any mention, directly or indirectly, in any manner whatsoever, concerning statements about Respondent's character and/or reputation as a "good father" to the Child. This evidence is irrelevant to any of the claims or defenses in this lawsuit and has no probative value.

Petitioner anticipates that Respondent, Respondent's counsel, or Respondent's witnesses will testify about the Respondent's character and/or reputation as a "good father" to the Child (notwithstanding that he violently abducted the Child and has isolated the Child from Petitioner since July 17, 2022). For example, although the document itself is hearsay, included within Exhibit B to the Response is a note from the Child's doctor in Florida, dated September 16, 2024, stating "[Child] has always been brought by her father, Mr. Evins [*sic*] Datis. This is documented in every visit note." [ECF No. 33].[8] To the extent Respondent seeks to offer any character or reputation

---

[8] Of course, the pediatrician may not be aware that Respondent wrongfully removed the Child from her habitual residence in Brazil without the Petitioner's approval and that the Petitioner

evidence related to his ability to be a good, capable, adequate, or stable father, whether through documents or witness testimony, this Court should exclude same because it is irrelevant, provides no probative value, and is unduly prejudicial. The only issue in this case is whether Petitioner is entitled to have the Child returned to Brazil such that a court of competent jurisdiction can determine custody. *See In re Leslie*, 377 F. Supp. 2d at 1238. Any evidence of Respondent's ability to be a good, adequate, or stable father is irrelevant, and therefore inadmissible, as it has no tendency to prove or disprove a fact of consequence to the Petition. *See* FED. R. EVID. 401, 402. Similarly, any evidence of Respondent's ability to be a good or adequate father is also irrelevant to Respondent's defenses, and therefore inadmissible. *See id.* As any such evidence, whether character, reputational, or other, regarding Respondent's ability to be a good, adequate, stable, or present father likewise has no has no tendency to prove or disprove a fact of consequence related to the elements of Respondent's raised affirmative defenses. *See id.*

At best, the evidence would relate to Respondent's "well-settled" defense, but even then it has no probative value. A child is well-settled when their "nontransitory life in [her] new country" is to "such a degree that return would be to the child's detriment." *Fernandez v. Bailey*, 909 F.3d 353, 361 (11th Cir. 2018). While the Court may consider factors such as the child's living environment, parental involvement, residential stability, and parental employment and financial stability, it may also consider measures taken to conceal a child's whereabouts and the "court must take care not to give significant weight to a child's views if the child has been unduly influenced by the respondent parent." *Walker*, 2013 WL 1110876, at *12. Evidence regarding Respondent's purported character or reputation as a good father is not determinative of how "well settled" the

---

cannot legally attend the doctor's appointments because she cannot get to the United States and she didn't know where her Child was living until recently.

Child is, nor is it the role of this Court to determine the ability of Petitioner or Respondent to parent the Child. This Court "only has jurisdiction to decide the merits of the wrongful removal claim." *Bocquet*, 225 F. Supp. 2d at 1340.

Evidence related to the Respondent being a good father to the Child should be excluded because it is irrelevant to any claim or defense in this lawsuit and because it has no probative value, and even if it did, the probative value would be outweighed by a danger of unfair prejudice, confusion of issues, and wasting time.

## V.    Motion in Limine No. 4: Preclude Child's Hearsay Statements

Petitioner requests this Court prohibit Respondent, Respondent's counsel, and/or any of Respondent's witnesses from making any mention, directly or indirectly, in any manner whatsoever, concerning statements made by the Child because those statements are hearsay, do not fall into any hearsay exception, would have a substantial influence on the outcome of this lawsuit, and are, therefore, inadmissible.[9] *See* Fed. R. Evid. 801, 802, 807; *see U.S. v. Christopher*, 923 F.2d 1545, 1551 (11th Cir. 1991).

Petitioner anticipates that Respondent, Respondent's counsel, or Respondent's witnesses will testify regarding statements that the Child made to them. For example, Respondent includes a footnote in his Response indicating that "[b]oth the Respondent and the child will testify that as soon as the child came to him on July 17, 2022, she complained about a severe pain in her shoulder and that the mother's boyfriend pushed her to the ground during an argument with her mother." [ECF No. 33]. Respondent should not be permitted to testify about any statements the Child made to him because these statements are hearsay and inadmissible. Additionally, any statements that the

---

[9] Petitioner separately requests that this Court prohibit the Child herself from testifying (Section II, *supra*) and this specific Motion in Limine relates to third parties testifying as to the Child's statements to them.

Child may have made to the Respondent between July 17, 2022—when the Respondent violently abducted and then wrongfully retained the Child—and present day are tainted because the Respondent isolated the Child from Petitioner. *See Soto*, 183 F. Supp. 3d at 1200; *In re S.L.C.*, 4 F. Supp. 3d at 1349-50. Additionally, if Respondent is permitted to testify regarding statements that the Child made to him, Petitioner is unduly prejudiced by not being able to cross examine the hearsay declarant to the same extent as if she testified. Petitioner does not believe it would be appropriate for the Child to testify, but it is also not appropriate for Respondent to be permitted to testify with hearsay statements from the Child who was violently abducted, wrongfully retained, and isolated from the Petitioner for over two years.

This Court should be concerned about the reliability of any alleged statements made by the Child to Respondent due to the high likelihood of undue influence based on many factors, including, without limitation, that the Child was three at the time she was abducted and isolated from Petitioner, Respondent concealed his and the Child's whereabouts from Petitioner, Respondent prohibited Petitioner from contacting the Child, and the Child has only spent time with the Respondent for over two of the mere five years of her life. The strong, unmitigated risk of undue influence makes any alleged statements by the Child unreliable.

The Court should not allow Respondent, Respondent's counsel, or Respondent's lay witnesses to testify or otherwise present evidence about any statements made by the Child to them because those statements are hearsay for which no exception can possibly apply and are highly unreliable given the circumstances.

## VI.   Motion in Limine No. 5: Preclude Lay Opinion Testimony of Medical Diagnosis

Petitioner requests this Court prohibit Respondent, Respondent's counsel, and/or any of

11

Respondent's lay witnesses[10] from making any mention, directly or indirectly, in any manner whatsoever, concerning the Child's medical diagnosis, treatment, or causation related to her alleged clavicle injury. Lay opinions are not permitted on topics that require special knowledge, skill, experience, or training. *See* Fed. R. Evid. 701. Only qualified medical experts may opine about medical causation—not lay witnesses. *See* Fed. R. Evid. 702. Not all lay witnesses who testify in this action may understand the scope of proper lay testimony without clear direction from this Court. To prevent improper evidence from being introduced, Petitioner moves this Court to exclude testimony by any lay witness as to the diagnosis, treatment, and/or causation of the Child's alleged clavicle injury and to rule that lay witnesses be instructed not to make any such statements while testifying at the Evidentiary Hearing.

Petitioner anticipates that Respondent, Respondent's counsel, or Respondent's witnesses, will opine on the Child's clavicle injury and that Respondent will use this alleged injury to discredit the Petitioner's care for her Child. In his Response, Respondent alleged that Petitioner's former boyfriend pushed the Child and caused a clavicle fracture. [ECF No. 33]. In her Petition, Petitioner alleged that the Child's clavicle was dislocated; and Respondent—who had abducted the Child from Petitioner—stated that the Child's clavicle was fractured. *Id.* Respondent states that the fact that Petitioner did not know whether the Child's clavicle was dislocated or fractured "shows that she did not care to find out why the child complained of pain as soon as she reached him [*sic*]." *Id.*[11]

---

[10] Respondent has not identified any expert witnesses.

[11] Respondent violently abducted the Child from Petitioner's arms on July 17, 2022 and, that same day, allegedly took the Child to the hospital. The Petitioner later learned about the Child's injuries and believes that the Child was injured as a result of the Respondent violently abducting the Child on July 17, 2022. Respondent blocked Petitioner from all communication with the Child since July 17, 2022 when he abducted the Child. Respondent's assertion that that Petitioner's lack of knowledge of the extent of the Child's injuries is somehow an indication of a lack of care is entirely misguided; Petitioner had no way of finding out the true extent of the injuries Respondent inflicted

Respondent includes a footnote in his Response indicating that "[b]oth the Respondent and the child will testify that as soon as the child came to him on July 17, 2022, she complained about a severe pain in her shoulder and that the mother's boyfriend pushed her to the ground during an argument with her mother." *Id.*

As stated above, Respondent should not be permitted to testify as to the Child's statements because they are hearsay and because the Child was three years old.[12] Respondent should also be precluded from providing lay testimony regarding the causation of the injury. Respondent, Respondent's counsel, and all witnesses listed on Respondent's witness list are lay witnesses who are not appropriately qualified experts and cannot testify about a medical diagnosis, treatment, and causation of a bodily injury. Each witness poses a risk of inadvertently offering statements regarding the cause of the Child's alleged injury, even without any affirmative intention of making such statements. For example, a lay witness may be asked, "what is your understanding as to the Child's injury?" to which the witness may respond, "her clavicle was fractured by Petitioner's former boyfriend," instead of simply, "her clavicle was fractured." Causation testimony on a medical issue such as a fractured clavicle by a lay witness is inadmissible and should be excluded; and any testimony of the medical diagnosis must be supported by medical records and professionals. Any testimony about the causation of the Child's alleged clavicle injury should be reserved for

---

upon the Child following the July 17, 2022 abduction *because Respondent abducted the Child and kept the Child secreted away from Petitioner from that point forward*. Petitioner contends that the Child was not injured prior to Respondent's violent and forceful abduction.

[12] Any statements from the Child to Respondent or other fact witnesses regarding the alleged clavicle injury are impermissible hearsay evidence which should not be permitted at the Evidentiary Hearing. *See* Fed. R. Evid. 801(c). Any statements from the Child about how the alleged injury took place are textbook hearsay for which no hearsay exception exists. *See* Fed. R. Evid. 803. There is no exception permitting Respondent or any other non-medical witnesses under these circumstances from testifying about what the Child said to them.

#511746815_v4

expert witnesses only. *See in re American Airlines Flight 331*, 2013 WL 12340397, at *2 (S.D. Fla. Oct. 24, 2013) ("Medical diagnoses and medical causation opinions ordinarily present technical and scientific issues that require the specialized knowledge of an expert witness.") (precluding the plaintiffs from testifying to any medical opinions, any technical matters beyond their knowledge, and to any out-of-court statements of medical professionals constituting inadmissible hearsay).

Finally, testimony about the diagnosis and causation of the Child's injury is irrelevant to the claims and defenses in this matter. Petitioner believes that Respondent will use the evidence in support of his "grave risk of harm" defense to argue that the Child cannot be around the Petitioner's ex-boyfriend. Foremost, Petitioner's ex-boyfriend did not assault the Child. Regardless, the evidence is irrelevant because case law regarding grave risk of harm is forward-looking only and Petitioner is no longer seeing or dating the man she was with as of July 17, 2022. *See, e.g., Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1261-62 (M.D. Fla. 2008). Therefore, even assuming, *arguendo*, that Petitioner's ex-boyfriend was a harm, which he is not, there is no "present" harm or danger to the Child sufficient for the defense to succeed.

This Court should not allow Respondent, Respondent's counsel, or Respondent's lay witnesses to testify about the diagnosis, treatment, or causation of the Child's alleged injury because such testimony is reserved only for expert witnesses and because it is not relevant. Petitioner also requests that the lay witnesses be warned on this instruction so that they do not inadvertently provide expert testimony as a lay witness.

## VII.   <u>Conclusion</u>

**WHEREFORE**, Petitioner, Tercilmene Monera, respectfully requests that this Court grant its Omnibus Motion *in Limine* contained herein and enter an Order restricting Respondent, Respondent's counsel, and any witnesses called by Respondent, from making any mention,

#511746815_v4

directly or indirectly, in any manner whatsoever, concerning the above-cited matters at any time during the Evidentiary Hearing.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel certifies that Counsel for Petitioner, Suzanne Busser, Esq., conferred with Counsel for Respondent, Phillip Brutus, Esq., via E-Mail on October 30, 2024, and Respondent opposes this Motion.

Dated: October 30, 2024

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By:   s/ *Suzanne Busser*

**DAVID IRA SPECTOR** (FBN 0865401)
email: david.spector@hklaw.com
secondary email: kim.roark@hklaw.com
**SUZANNE M. BUSSER** (FBN 1002654)
email: suzanne.busser@hklaw.com
**KYLEE NEERANJAN** (FBN 1050749)
email: kylee.neeranjan@hklaw.com
777 S. Flagler Drive, West Tower, Suite 1900
West Palm Beach, Florida 33401
Tel: (561) 833-2000

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 30, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that I have served a copy to Respondent's counsel of record listed below.

By:   s/*Suzanne Busser*

SUZANNE BUSSER

Phillip J. Brutus, Esq.
Brutus Law Group
301 W. Atlantic Avenue, Suite 0-8
Delray Beach, FL 33444
Tel: 561-526-8383
Email: info@brutuslawgroup.com

#511746815_v4