**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:24-cv-80958-AMC**

TERCILMENE MONERA,

      Petitioner,

v.

EVENS DATIS,

      Respondent.

_____/

**PETITIONER'S MOTION FOR RECONSIDERATION AND,**
**ALTERNATIVELY, CERTIFICATION FOR INTERLOCUTORY APPEAL**

Pursuant to Federal Rules of Civil Procedure 59 and 60, Petitioner, Tercilmene Monera ("Petitioner"), respectfully moves for reconsideration of the Court's Order ECF No. 59 ("Order") which effectively denies, in part, Petitioner's Motion to Permit Remote Testimony at Evidentiary Hearing ECF No. 52 ("Motion for Remote Testimony").[1] Alternatively, pursuant to 28 U.S.C. 1292(b), Petitioner respectfully moves for certification to file an interlocutory appeal to resolve a threshold issue presented by the Court's Order and the Court's denial of Petitioner's request to testify remotely. In support of this motion, Petitioner submits the following memorandum of law.

**PRELIMINARY STATEMENT**

Petitioner filed this case pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the implementing statute, the International Child Abduction Remedies Act ("ICARA"), because Respondent, Evens Datis ("Respondent"), abducted Petitioner's minor child and removed the child from Brazil to the United States. The Convention

---

[1] The Order does not explicitly deny the Motion for Remote Testimony, but the Order requires Petitioner to appear at the evidentiary hearing in person.

aims to protect children from the harmful effects of international parental child abduction by encouraging the prompt return of abducted children to the country where they habitually resided prior to the abduction. *See* Convention, preamble. "The Convention is designed to restore the pre-abduction status quo and to deter parents from crossing international borders in search of a more sympathetic forum." *Furnes v. Reeves*, 362 F.3d 702, 710 (11th Cir. 2004). And to "protect the legal rights of the non-abducting parent." *In re D.D.*, 440 F. Supp. 2d 1283, 1292 (M.D. Fla. 2006).

"The Convention proposes a six-week timeframe from the initial filing of the petition to a decision regarding return." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013); Convention, Art. 11. "The Supreme Court has recommended that 'courts . . . take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation.'" *Chafin*, 742 F.3d at 936-37 (citing *Chafin v. Chafin*, 568 U.S. 165, 179 (2013)). "It may be appropriate for district courts to consider local rules or administrative operating procedures that would ensure expedited consideration." *Chafin*, 742 F.3d at 937.

This Motion is directed at whether Petitioner—who is a Haitian national living legally in Brazil—and any third-party witnesses not within the United States may testify remotely at the evidentiary hearing because they are unable to obtain a visa to legally enter the United States (either due to denial, cost, or other reasons) for the sole purpose of testifying at the evidentiary hearing. Throughout this lawsuit, and in the Order, this Court held "**Petitioner is required to appear at the evidentiary hearing in person.**" *See* ECF No. 59 (emphasis in original); *see also* ECF Nos. 20 & 39. This Court continues to postpone the evidentiary hearing pending Petitioner satisfying this Court's requirement that she appear at the evidentiary hearing in person, notwithstanding the fact that Petitioner has been denied a visa to legally enter the United States and that Petitioner and third-party witnesses have shown good cause in compelling circumstances to testify via remote means

with appropriate safeguards in compliance with Rule 43. Petitioner respectfully submits that this Court's ruling and position that Petitioner and third-party witnesses must appear in person at the evidentiary hearing is erroneous, entirely against the aims of the Convention to provide expeditious relief and to protect the legal rights of the non-abducting parent, and results in manifest injustice and extreme prejudice to Petitioner.

Petitioner brought this action against Respondent because he abducted their minor child and took the child out of Brazil, her habitual residence, and into the United States without Petitioner's consent. Petitioner is utilizing the Hague Convention and ICARA in an attempt to restore the pre-abduction status quo of having custody of her daughter. However, Petitioner is not being permitted to benefit from the Hague Convention due to the Court's requirement that she attend the evidentiary hearing in person. Petitioner has tried on two occasions to obtain a visa to legally enter the United States and was denied twice. Petitioner did not choose this forum. Under the Hague Convention, Petitioner was required to file her lawsuit in the Southern District of Florida because that is where Respondent and the minor child are located since Respondent abducted the minor child and, upon information and belief, illegally smuggled her out of Brazil and into the United States through Mexico. 22 U.S.C. § 9003(b). While Petitioner is attempting to follow lawful procedure, despite her best efforts and assistance from counsel, she cannot obtain a visa and the Court's ruling requiring her in-person attendance at the evidentiary hearing is causing severe prejudice by preventing Petitioner from having her day in Court, while permitting Respondent (*the abducting parent*) to live happily with the minor child in the United States, notwithstanding that Respondent abducted the minor child and is isolating her from Petitioner.

The Court's requirement that Petitioner attend the evidentiary hearing in person is at odds with the Convention, ICARA, the Federal Rules of Civil Procedure, and other court rulings

(including this Court's rulings) which have permitted remote testimony when in-person attendance was not possible or too expensive.

Accordingly, this Court's Order should be reconsidered and Petitioner's Motion for Remote Testimony should be granted in full. Alternatively, to the extent this Court intends to further its position that it will not resolve the Petition within an expeditious timeframe merely because it is requiring Petitioner to attend the evidentiary hearing in person (notwithstanding the fact that Petitioner cannot legally enter the United States and the fact that Petitioner can appear via remote means with appropriate safeguards in place), Petitioner respectfully requests that the issue be certified for immediate appellate review. Allowing Petitioner (and third-party witnesses) to testify remotely is a threshold issue to resolving the claims in the Petition and is a simple consideration that, if this Court does not reconsider, will contravene the aims of the Convention, incentivize forum shopping for an abducting parent, risk an increase in abduction cases, and adversely alter the status quo of Hague Convention lawsuits within the Southern District of Florida.

For these and other reasons described below, this Motion should be granted.

## PROCEDURAL POSTURE

### *Legal Proceedings*

Petitioner filed her Verified Petition for Return of Minor Child to Brazil and Request for Issuance of Show Cause Order ("Petition") on August 7, 2024. Petitioner alleges that Respondent violently abducted their minor child from Brazil and wrongfully retained the child in Florida without the Petitioner's knowledge or consent. Petitioner alleges all elements for wrongful removal of the child, including: (1) the minor child is under the age of 16; (2) the habitual residence of the minor child immediately before the date of the wrongful removal was Brazil; (3) the removal of the minor child from Brazil breached Petitioner's custody rights under Brazilian law; and (4) petitioner

#513741882_v2

was exercising custody rights at the time of the removal. *See* Petition at ¶¶ 62-79.

On August 8, 2024, the Clerk filed a Notice re Expedited Review recognizing the Petition should be resolved within six weeks from the initial filing. ECF No. 4. The Petition should have been resolved on or around September 18, 2024 at the latest.

This Court held a status conference on August 13, 2024 wherein Petitioner's counsel updated the Court on efforts to serve Respondent and Respondent appeared with an acquaintance to assist in translating from English to Creole. ECF No. 11. On August 15, 2024, the Court set an in-person status conference for August 20, 2024. ECF No. 13. As early as August 19, 2024, the Court advised Petitioner to initiate procedures expeditiously to facilitate in person attendance at a future evidentiary hearing in the matter, which Petitioner did. ECF No. 16.

On August 20, 2024, this Court held an in-person status conference and gave Respondent until September 6, 2024 to obtain new counsel and until September 23, 2024 to respond to the Show Cause Order. ECF No. 19. This Court set the final evidentiary hearing for October 29, 2024. ECF No. 20. Respondent filed his Answer and Affirmative Defenses on September 22, 2024 and corresponding affidavit on September 23, 2024. ECF Nos. 33 & 34.

On September 30, 2024, the Parties filed their Joint Scheduling Report and provided a status update on Petitioner's visa status. ECF No. 38. On October 3, 2024, this Court *sua sponte* rescheduled the evidentiary hearing from October 29, 2024 to November 14-15, 2024. ECF No. 39. On October 3, 2024, Petitioner provided a visa status update to this Court informing the Court that Petitioner was able to re-schedule her visa appointment to a newly available appointment on October 4, 2024 at 8:00 AM. ECF No. 41. Thereafter, on October 4, 2024, Petitioner provided a visa status update to this Court informing the Court that Petitioner's visa was denied. ECF No. 44.

On October 14, 2024, Petitioner filed another visa status update and requested a status

conference. ECF No. 45. Petitioner's first visa application was denied because, according to the U.S. Consulate General in São Paolo, she lacked ties to Brazil that would compel her return back to Brazil. Counsel was concerned that if Petitioner applied for a visa a second time that the Consulate would not find any change in her "ties to Brazil" and would deny her visa again.

On October 24, 2024, Petitioner filed her Motion for Remote Testimony requesting leave for Petitioner and her third-party witnesses to appear remotely at the evidentiary hearing. On October 30, 2024, the Court *sua sponte* cancelled the evidentiary hearing set for November 14-15, 2024, and set a status conference for November 7, 2024.

At the November 7, 2024 status conference, the Court indicated that it could not assist Petitioner with obtaining a visa to the United States, but nonetheless required that she attend the evidentiary hearing in person. The Court issued the Order effectively denying the Motion for Remote Testimony and continues to require that Petitioner attend the evidentiary hearing in person.

*Petitioner's Immigration Attempts*

Petitioner is a Haitian national living legally in Brazil. As of August 2024, when Petitioner initiated this lawsuit, she did not have a valid passport. Petitioner previously had a Haitian passport but it expired in 2023 and she did not renew it.

In August/September 2024, upon receiving the order from this Court that Petitioner should initiate procedures to facilitate in person attendance at the evidentiary hearing, Petitioner worked with her local counsel in Brazil to contact the Haitian Embassy in Brazil to follow up on her passport renewal application from 2023, but she was not able to obtain a Haitian passport. On or around September 9, 2024, Petitioner went to the Brazilian Federal Police to secure an emergency Brazilian passport. The Federal Police required that Petitioner provide documentation from the Haitian Embassy explaining the Haitian Embassy's inability to issue the Haitian passport in time. Petitioner

6

obtained this information from the Haitian Embassy and provided it to the Federal Police.

On September 23, 2024, Petitioner confirmed with the Federal Police that her passport would be ready by October 1, 2024. Petitioner obtained her emergency Brazilian passport on September 26, 2024. That same day, Petitioner submitted her visa application to travel to the United States. Petitioner scheduled her visa interview appointment for November 1, 2024 at 8:00 AM, which was the earliest available date at the time of scheduling. Simultaneously, Petitioner's counsel had been in contact with the United States Department of State's Brazil County Officer to assist Petitioner with the process. Petitioner and her counsel continued to look for earlier visa appointment dates. Petitioner was able to reschedule her visa appointment to October 4, 2024.

Petitioner attended her visa appointment on October 4, 2024 with a letter from her counsel explaining the reason for Petitioner's visa application and that her pro bono counsel would be covering the cost of her round-trip travel. Petitioner's visa was denied. According to the denial letter provided to Petitioner, Petitioner had not demonstrated that she has ties to Brazil that will compel her return to Brazil after her travel to the United States.

Thereafter, Petitioner submitted a new application to obtain a visa. Before she was able to make another appointment, she had to wait for the denial to populate in the online system. Petitioner was later able to submit for a second application and scheduled her interview for the first available date on December 3, 2024. Petitioner's counsel sent two additional letters (with copies of each in English and Portuguese) with Petitioner to show the U.S. Consulate General at her appointment, as well as the Court's orders mandating Petitioner's in-person attendance at the hearing. Petitioner later informed counsel that the adjudicator at Petitioner's second visa appointment did not read the letters and enclosures Petitioner presented during the interview. Petitioner's second visa application was denied for a lack of ties to Brazil, the same reason for the first denial.

<u>**ARGUMENT**</u>

I.      <u>**THE ORDER SHOULD BE RECONSIDERED**</u>

     A.      **Standard for Reconsideration**

While the Federal Rules of Civil Procedure do not specifically discuss motions for reconsideration, it is widely recognized that Rule 59(e) encompasses motions for reconsideration. *Brown v. Davis*, 3:13-cv915-J-24MCR, 2016 WL 1721885, *1, n. 1 (M.D. Fla. Apr. 29, 2016). There are three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *See S.P. Richards Co. v. Hyde Park Paper Co.*, Inc., No. 811CV01204EAKTGW, 2015 WL 6445663, at *2 (M.D. Fla. Oct. 23, 2015); *Frantz v. Walled*, 513 Fed. App'x. 815, 822 (11th Cir. 2013). Clear error or manifest injustice "occurs where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *U.S. v. Cano*, No. 95-00481-CR, 2020 WL 7415833, at *1 (S.D. Fla. Dec. 16, 2020). Rule 60 also authorizes motions for reconsideration, allowing the Court to relieve a party from an order for, among other reasons, a "mistake" or "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b).

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact[.]" *Rogers v. U.S.*, 2016 WL 4805920, at *2 (S.D. Fla. Feb. 24, 2016). In particular, a motion for reconsideration is justified to "correct clear error or prevent manifest injustice." *Id.*; *Waite v. All Acquisition Corp.*, 2016 WL 2346768, at *2-4 (S.D. Fla. Mar. 10, 2016). A motion for reconsideration is specifically appropriate where the "Court has patently misunderstood a party" or has "made an error not of reasoning, but of apprehension[,]" *Rogers*, 2016 WL 4805920, at *2, and in "order to do substantial justice[,]" *Zapata Carrero v. Sanabi Invs.*, 2019 WL 3024462, at

*3 (S.D. Fla. Mar. 12, 2019) (quotations omitted).

In the Order and via its position, this Court finds that Petitioner is required to attend the evidentiary hearing in person for the evidentiary hearing to take place, notwithstanding that there is "good cause in compelling circumstances" and "appropriate safeguards" available to permit Petitioner and third-party witnesses to testify remotely. Fed. R. Civ. P. 43. For the reasons discussed below, reconsideration is appropriate under either the standard articulated by Rule 59 or Rule 60. In particular, Petitioner respectfully submits there is "need to correct clear error or prevent manifest injustice." *S.P. Richards Co.*, 2015 WL 6445663, at *2.

### B.        The Order is at Odds with the Aims of the Convention

If this Court allows its Order and position to stand as is, it will completely nullify the aims of the Convention, not only to expeditiously resolve Convention matters, but also to protect the minor child and the legal rights of the non-abducting parent. Petitioner submits that this result is both erroneous and manifestly unjust. The Convention aims to protect children from the harmful effects of international parental child abduction by encouraging the prompt return of abducted children to the country where they habitually resided prior to the abduction. *See* Convention, preamble. "The Convention is designed to restore the pre-abduction status quo and to deter parents from crossing international borders in search of a more sympathetic forum." *Furnes*, 362 F. 3d at 710. As well as to "protect the legal rights of the non-abducting parent." *In re D.D.*, 440 F. Supp. 2d at 1292. The Convention has a six-week timeframe and it is recommended that "'courts . . . take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation.'" *Chafin*, 742 F.3d at 936-37 (citations omitted).

The Convention does not require in person attendance at the evidentiary hearing. The Convention, however, does require that the lawsuit be filed in the jurisdiction where the abducting

parent and minor child reside. 22 U.S.C. § 9003(b). In this case, that is the Southern District of Florida. Petitioner did not choose this jurisdiction, but was forced to file in this jurisdiction because that is where Respondent took Petitioner's minor child after abducting the minor child and removing her from Brazil. The Convention is meant to provide quick resolution of international abduction cases to resolve whether the habitual country of the minor child's residence prior to abduction should decide the custody issues. By requiring the Petitioner to appear in person at the evidentiary hearing when she cannot do so legally (after multiple attempts), especially when Petitioner is able and available to testify via remote means with appropriate safeguards in place, this Court's order runs directly contrary to the core purpose and aims of the Convention.

Specifically, Petitioner's Petition should have been resolved by mid-September 2024. The evidentiary hearing is currently set for January 2024 (over four months after the Petition was filed) and will likely not go forward on that date because Petitioner's most recent visa application was also denied. Petitioner applied for a visa twice and her application was denied each time for the same exact reason. Petitioner and her counsel do not believe it is worthwhile to apply for a visa a third time because there are no factors that would change her ties to Brazil within the near future, so it is very likely that her visa will again be denied for the same reason; and Petitioner cannot afford to continue paying for the application fee.

Petitioner, via her pro bono counsel, has explored other options for her legal entry into the United States to attend the evidentiary hearing, including humanitarian or significant public benefit parole, but this process typically takes between 12 and 18 months and there is no guarantee at the end of the process whether Petitioner will be granted legal entry into the United States. Put simply, even if Petitioner was able to afford the parole application (which she cannot) and even if Petitioner was able to find counsel to assist her with the technical processes of parole, there is a significant

chance that the evidentiary hearing will be delayed by another year or more to accommodate this immigration procedure and Petitioner may *still* be denied legal entry into the United States. In which case, the evidentiary hearing will have been unnecessarily delayed and there *would still* remain no other option for Petitioner to enter the United States legally. Given the Convention's emphasis on expeditious proceedings, clearly these types of lengthy and insecure immigration processes were not foreseen as necessary in order to resolve child abduction cases. Given the aims of the Convention, the prejudice to Petitioner, and the sake of the minor child, this Court should not wait an indefinite number of months, or years, to see if Petitioner can gain entry into the United States via another immigration avenue, like parole. Instead, this Court should permit Petitioner and her third-party witnesses to appear remotely at the evidentiary hearing.

Meanwhile, by continuing to postpone and reschedule the evidentiary hearing, the Court is effectively punishing the victim (Petitioner) while rewarding the wrongdoer (Respondent, who is alleged to have abducted Petitioner's minor child and, upon information and belief, illegally smuggled himself and the minor child out of Brazil and into the United States). This Court's position is permitting Respondent to get exactly what he wants: more time in the United States with the minor child he abducted from Petitioner; and precluding Petitioner from having her day in court. This Court is essentially making a ruling in favor of Respondent—permitting Respondent (the alleged wrongdoer) to live freely in South Florida with the minor child isolated from Petitioner— without having seen or heard any evidence.

The Convention is designed for expeditious resolution within six weeks to protect the child and the rights of the non-abducting parent. With its rulings, this Court is protecting the abducting parent (Respondent) and violating the aims of the Convention. By requiring Petitioner to jump through immigration-related hoops to attend the evidentiary hearing in person, which is not a

requirement under the Convention in any scenario, the Court is contravening the purpose and design of the Convention. Rather, the Court should permit Petitioner (and any third-party witnesses) to testify via remote means with appropriate safeguards in place to give Petitioner her day in court and to resolve this lawsuit.

**C.      The Order is at Odds with the Federal Rules of Civil Procedure**

Similarly, this Court's Order is at odds with the Federal Rules of Civil Procedure. Pursuant to Rule 43, Petitioner's inability to legally enter the State of Florida and cost associated therewith are good cause in compelling circumstances allowing the Court to permit remote appearances and testimony.

Federal Rule of Civil Procedure 43(a) addresses testimony by transmission:

(a) In Open Court. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a).

Rule 43 expressly permits testimony in open court by contemporaneous transmission from a different location for good cause in compelling circumstances and with appropriate safeguards.

Petitioner has shown good cause in compelling circumstances and shown that she and her counsel can provide appropriate safeguards such that this Court's Order and position continuing to require Petitioner to attend the evidentiary hearing in person is at odds with the Federal Rules. Petitioner's good cause is as follows: Petitioner and all of her witnesses are located outside of the United States and are not likely to be permitted visas to enter the United States. Petitioner has already applied for a visa twice and was denied each time. Petitioner's third-party witnesses have not yet applied for any visas because they cannot even afford the application costs. Even if the

12

third parties could afford to apply for a visa, there is no guarantee that their visa(s) would be granted. Given the background similarity between Petitioner and some of the third-party witnesses (i.e., Haitian nationals living and working in Brazil), it is likely that the third-party witness visa application(s) would be denied for the same reason that Petitioner's two visa applications have been denied (lack of ties to Brazil). Even if they could afford a visa application, and even if a visa application were somehow granted, the third-party witnesses could not afford to travel to the U.S. The inability to legally travel to the United States alone is sufficient justification under the Federal Rules for remote testimony and is an unexpected or unforeseen circumstance that Petitioner and her counsel cannot surmount.

Additionally, cost is a significant factor preventing Petitioner and the third parties from attending the evidentiary hearing in person. Assuming Petitioner could obtain a visa to the United States, she could not afford the international travel and her pro bono counsel has agreed to pay for her travel and stay in the United States if she is able to obtain a visa. The third-party witnesses, however, are unable to afford to apply for the visas and therefore cannot afford the international travel.[2] Whereas Petitioner has pro bono legal counsel to cover her travel costs (if she can get a visa), the third-party fact witnesses do not have the same convenience and cannot afford to come to the United States to testify. Cost alone is sufficient justification under the Federal Rules for remote testimony, but coupled with the immigration restrictions and international travel, this Court has good cause in compelling circumstances (even exceptional circumstances, although not the standard) to permit remote testimony. *See Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010) (citing *Dagen v. CFC Grp. Holdings*, 2003 WL 22533425 at *2 (S.D.N.Y. Nov. 7, 2003))

---

[2] Each visa application costs $250 USD and current roundtrip flights from São Paolo to Miami range from $800 to over $1,700 each for the January 14-15, 2025 evidentiary hearing.

("cost of international travel can provide good cause for contemporaneous transmission of testimony").

Furthermore, there is technology readily available in the courtroom to take the contemporaneous video or telephone transmission testimony. Compelling the Petitioner and third-party witnesses to travel to Florida from Brazil to testify would be unduly burdensome and disproportionately expensive to Petitioner and the witnesses in the circumstances of this case.

### D.    The Order is at Odds with Other Courts that Have Addressed this Issue

Permitting remote testimony in Hague Convention cases is not a matter of first impression and countless courts in Florida—including this Court—and throughout the United States permit remote testimony to further the aims of the Convention and expeditious resolutions of petitions filed thereunder.

By way of example, the United States District Court for the District of Maryland considered the rule on transmission testimony in *Lopez*, 748 F. Supp. 2d at 479-80. There, the district court, in a jury trial,[3] ruled that certain plaintiffs would be permitted to testify from Honduras by video conference for the jury, explaining:

> Despite videoconferencing's deficiencies,[4] courts in this circuit and elsewhere have approved or affirmed its use in the civil context. *See generally Rusu v. INS*, 296 F.3d 316 (4th Cir. 2002) (asylum proceeding); *United States v. Baker*, 45 F.3d 837 (4th Cir. 1995) (civil commitment hearing); *Edwards v. Logan*, 38 F.Supp.2d 463 (W.D. Va. 1999) (civil rights action); see also *In re Merck Prods. Liab. Litig.*, 439 F.Supp.2d 640, 642 (E.D. La. 2006) (listing cases). These cases reflect a "consistent sensitivity to the utility of evolving technologies that may facilitate more efficient, convenient, and comfortable litigation practices." 9A Wright & Miller, Federal Practice & Procedure § 2414 (3d ed. 2008).
> . . .
>
> In this case, Plaintiffs have demonstrated good cause as to those Plaintiffs residing in Honduras. **The cost of international travel can provide good cause for**

---

[3] Here, the Court would be conducting an evidentiary hearing without the presence of a jury.

[4] This opinion is from 2010 and, 14 years later, videoconferencing has improved significantly.

**contemporaneous transmission of testimony.** *See, e.g.,* ***Dagen v. CFC Grp.*** ***Holdings***, No. 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003). **In some cases, travel cost and inconvenience have justified contemporaneous** **transmission even when the parties where located within the United States, in** **contrast to the internationally resident Honduran Plaintiffs in this case**. *See, e.g.,* *Beltran–Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000) (affirming use of telephonic testimony for hearing in California where witness was in Missouri); *Scott Timber, Inc. v. United States*, 93 Fed.Cl. 498, 499–501 (2010) (approving use of videoconferencing for trial in Washington, D.C., where witness was in Oregon); *Fed. Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (finding good cause for videoconferencing where witness was in Oklahoma and hearing was in Washington, D.C.). Forcing the Honduran Plaintiffs in this case to travel to the United States would impose substantial inconvenience and cost on persons with strikingly few financial resources. (Paper 76–1). When viable alternatives like videoconferencing are available, compelling individuals who make no more than $7,000 a year to travel hundreds of miles seems fundamentally unjust. And although the court sympathizes with Defendants' claim that this litigation has already imposed substantial costs on them as well (Paper 75, at 4–5), those costs do not justify imposing needless expense on Plaintiffs.

748 Supp. 2d at 480 (emphasis added).

Since the pandemic, courts in the Southern District of Florida have permitted witnesses to appear via remote videoconference. *See e.g.*, *Colon v. Mejia Montufar*, No. 2:20-cv-14035-KMM, [ECF No. 39]; *Radke v. NCL (Bahamas) Ltd*., No. 1:19-CV-23915, [ECF No. 45]; *In re F.S.R.G.*, 1:21-cv-81573-CANNON [ECF No. 29].

Many other jurisdictions have also permitted witnesses to appear via remote means in similar situations. *See, e.g., Valenzuela v. Michel*, 736 F.3d 1173 1175 (9th Cir. 2013) ("At trial, Blanca [the mother] and her witnesses testified via telephone from Mexico with the help of an interpreter."); *Mota v. Castillo*, 692 F.3d 108, 111 (2d Cir. 2012) ("The court permitted the parties limited discovery, and then held a two-day bench trial in which Asuncion Mota [the mother], her parents, and her uncle testified via telephone with the aid of interpreters, and Rivera Castillo [the father] testified in person."); *Virtual Architecture, Ltd. v. Rick*, 2012 WL 388507, at *2 (S.D. N.Y. Feb. 7, 2012) (permitting remote testimony "Given the difficulties faced by the witness in traveling

from the Seychelles to the United States, the ready availability of effective two-way videoconferencing equipment, and the relevance of the witness's testimony."); *Blue Cross & Blue Shield of Fla., Inc. v. Davita, Inc.*, 2022 WL 18492515, at *4 (M.D. Fla. May 27, 2022) (finding good cause in compelling circumstances and permitting remote testimony); *Guerra v. Rodas*, 2020 WL 2858534, at *2, n.3 (W.D. Ok. June 2, 2020) ("Guerra Guerra's indigency and extenuating circumstances surrounding the COVID-19 pandemic—including travel restrictions and the need for imposition of safeguards related to the pandemic—constitute 'compelling circumstances' that warranted permitting Guerra Guerra [the mother] to testify remotely."); *Flores v. Alvarado*, 2018 WL 1697314, at *2 (W.D. N.C. Apr. 6, 2018) (finding good cause in compelling circumstances and permitting remote testimony, in part, when the petitioner was unable to obtain a visa permitting entry into the United States and was financially unable to pay for the travel); *Salguero v. Argueta*, 2017 WL 1113334, at *1 (E.D. N.C. Mar. 23, 2017) (finding good cause in compelling circumstances when petitioner represented to the court that he cannot afford the international travel and would be unable to obtain a visa to enter the United States by the hearing date); *Mendoza v. Pascual*, 2015 WL 13650770, at * 2 (S.D. Ga. May 5, 2015) (permitting remote testimony based on petitioner's inability to obtain a visa); *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 669 (D.C. Ct. App. 2007) (affirming the trial court's approval of remote testimony when the witness could not obtain a visa to travel); *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 187 (E.D. N.Y. 2010) (petitioner who had been unable to obtain a visa to travel testified via live video link from London, England); *Matovski v. Matovski*, 2007 WL 1575253, at *3 (S.D. N.Y. May 31, 2007) ("In the limited context of an ICARA case . . . I consider the father's inability to obtain a visa, his limited financial resources and his physical distance (22 hours by air travel) to satisfy the standard of 'for good cause showing in compelling circumstances.'"); *Alvarez Romero v. Gajardo Bahamonde*,

16

2020 WL 12655611, at *2 (M.D. Ga. June 23, 2010) (permitting remote testimony for him and any witnesses living outside the United States); *Cunningham v. Cunningham*, 2016 WL 8261726, at *2 (M.D. Fla. Dec. 27, 2016) (permitting remote testimony); *Romanov v. Soto*, 2022 WL 356205, at *1 (M.D. Fla. Feb. 7, 2022) ("In addition, the Court heard, via Zoom, the testimony of Steven Bookman and Jeff Rechtshaffen, the Canadian lawyers representing the Father and Mother, respectively, in the family law proceedings pending in Canada. The Mother also presented the Stepmother's testimony via Zoom."); *Vite-Cruz v. Sanchez*, 2018 WL 4359217, at *1 (D. S.C. Sept. 13, 2018) (permitting remote testimony when the parties were unable to testify in person because of either financial constraints or legal impediments to doing so).

Further, contemporaneous transmission by means of video teleconference provides a sufficient medium for the court to determine the credibility of the witness. *See, e.g.*, *Federal Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 4 (D.D.C. 2000) ("there is no practical difference between live testimony and contemporaneous video transmission based upon my experience in presiding over two hearings"); *see also Walker v. Walker*, No. 11 C 2967, 2013 WL 1110876, at *2 (N.D. Ill. Mar. 16, 2013) ("The Court also heard further testimony from [Petitioner] (who testified under oath by video from Australia . . ."); *Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 865 (N.D. Ill. 2001) ("[Petitioner] remained in this country from October 20 through October 31 (T. 356), but gave testimony in this case by telephone after his return to Italy.").

Accordingly, the Court's Order runs contrary to district court holdings permitting remote testimony in such situations.

### E.   Petitioner has Shown Good Cause in Compelling Circumstances with Appropriate Safeguards to Permit Remote Testimony

As explained above, Petitioner has shown good cause in compelling circumstances with appropriate safeguards to permit remote testimony for her and the third-party witnesses. There is

no justified reason for this Court to require Petitioner's in person attendance for the evidentiary hearing to take place when doing so violates the aims of the Convention, is at odds with the Federal Rules, is at odds with other court opinions, and there is a viable alternative which would allow the Court to expeditiously resolve this matter.

In this situation, Petitioner is unable to legally enter the United States as both of her visa applications have been denied for the same reason, which she cannot change. The legal impediment to entering the United States is alone sufficient to permit remote testimony. *See Virtual Architecture, Ltd.*, 2012 WL 388507, at *2; *Flores*, 2018 WL 1697314, at *2; *Salguero*, 2017 WL 1113334, at *1; *Mendoza*, 2015 WL 13650770, at * 2; *El-Hadad*, 496 F.3d at 669; *Haimdas*, 720 F. Supp. 2d at 187; *Matovski*, 2007 WL 1575253, at *3.

Furthermore, her third-party witnesses (who are likely unable to obtain visas to visit the United States)  cannot afford to apply for visas. This cost impediment is, again, sufficient for this Court to permit remote testimony. *Flores*, 2018 WL 1697314, at *2; *Salguero*, 2017 WL 1113334, at *1; *Matovski*, 2007 WL 1575253, at *3; *Vite-Cruz*, 2018 WL 4359217, at *1.

Finally, the Petitioner has demonstrated through counsel that appropriate safeguards will be in place for remote testimony. Petitioner can be accurately identified before testifying, can testify in a room alone or with an attorney to protect against outside influence, and third-party remote video conferencing technology can be used to provide accurate transmission. *See, e.g., Salguero*, 2017 WL 113334, at *2. Petitioner and many third-party witnesses can testify from Petitioner's local counsel's office in Brazil.

Petitioner respectfully submits that this Court's Order requiring Petitioner to appear in person at the evidentiary hearing and prohibiting her and third-party witnesses from testifying remotely is clear error and will result in manifest injustice to Petitioner and possibly other non-

abducting parents who are precluded from testifying remotely in similar situations. The Order should be reconsidered and Petitioner's Motion for Remote Testimony should be granted in full.

## II.     THE ORDER SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL

As discussed above, this Court's Order will have an adverse impact on non-abducting parents in Hague Convention cases. The Court's Order reflects that the Southern District of Florida will effectively not recognize remote testimony and will not resolve Convention matters within the six-week timeframe if the non-abducting parent cannot attend the evidentiary hearing in person. To the extent the Court decides to maintain this position, Petitioner respectfully requests that this Court certify, at minimum, the following question for interlocutory appeal so that Petitioner can resolve this issue without further delay: **Can a non-abducting petitioner under the Hague Convention be required to attend the final evidentiary hearing in person where petitioner has demonstrated an inability to legally enter the United States, thereby precluding expedited consideration of the petition?**

Generally, only final orders are appealable. *See* 28 U.S.C. § 1291. One exception, however, is where the district court certifies the order for immediate appellate review. *See id.* § 1292(b). An issue should be certified for such an interlocutory appeal where:

> (1) the appeal presents a pure question of law,
> (2) the question is controlling of at least a substantial part of the case,
> (3) the district court identifies the question in its order,
> (4) there are substantial grounds for differences of opinion on the question, and
> (5) resolution of the question may reduce the amount of litigation necessary on remand.

*Drummond Co. v. Conrad & Scherer*, 885 F.3d 1324, 1336 (11th Cir. 2018) (quotation omitted) (exercising jurisdiction over certified question). This Court's Order warrants such certification.

### A.     The Question Presented Meets All Requirements for Interlocutory Appeal

All of the elements for interlocutory appeal are met here.

*First*, this is a "pure question of law." The Eleventh Circuit will not need to engage in much, if any, factual analysis to address the question presented and will not need to delve beyond the surface of the record to determine the facts. Indeed, there is hardly any reason for the Eleventh Circuit to even review the complaint to address the question. The Eleventh Circuit would only need to consider whether a district court can continue to postpone the final evidentiary hearing to require a petitioner to attend in person (particularly when her visa applications have been denied).

*Second*, the question is controlling of a substantial part of the case because it is the only issue preventing the matter from reaching final resolution at the evidentiary hearing. In other words, but for the requirement that Petitioner attend the evidentiary hearing in person, the matter can be heard and resolved at any time.

*Third*, the question would be identified in the Court's order were it to grant certification.

*Fourth*, as discussed above, the Court's Order is risking a jurisdictional split (being the first that counsel is able to find of this kind) such that, if the Court does not reconsider the Order, there is facially "substantial grounds for differences of opinion on the question."

*Finally*, resolution of this question may reduce the amount of litigation necessary on remand because Petitioner will be able to focus on the Petition (not immigration issues) and the parties will receive finality with the lawsuit. Resolution of the question will serve to substantially shorten the litigation because it could mean the parties can actually attend the evidentiary hearing without waiting for Petitioner to obtain a visa that, frankly, may never be granted.

        **B.**    **Compelling Policy Reasons Support Exercising Discretion for Certification**

Additionally, there are strong policy reasons for certifying this question for immediate appellate review. This Court's Order materially impacts Petitioner and may impact other parties involved in Hague Convention cases—likely to the benefit of the abducting parent and the detriment

of the non-abducting parent. This decision may have consequences to incentivize an abducting parent to make their way to the Southern District of Florida under the guise that if the non-abducting parent cannot legally enter the United States, the abducting parent is safe from a final hearing that may result in a negative ruling against them. *This ruling only benefits the abducting parent and needlessly punishes the non-abducting parent <u>and</u> the minor child.*

### CONCLUSION

For the reasons stated herein, Petitioner's Motion for Reconsideration should be granted in full. Alternatively, Petitioner's Motion for Certification for Interlocutory Appeal to immediately appeal the issue presented should be granted.

### LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel certifies that Counsel for Petitioner, Suzanne Busser, Esq., conferred with Counsel for Respondent, Phillip Brutus, Esq., via E-Mail on December 2 and 4, 2024, and that Mr. Brutus opposes the relief requested.

Dated: December 6, 2024

Respectfully submitted,
**HOLLAND & KNIGHT LLP**

By: _ s/ *Suzanne Busser* _

**DAVID IRA SPECTOR** (FBN 0865401)
email: david.spector@hklaw.com
secondary email: kim.roark@hklaw.com
**SUZANNE M. BUSSER** (FBN 1002654)
email: suzanne.busser@hklaw.com
**KYLEE NEERANJAN** (FBN 1050749)
email: kylee.neeranjan@hklaw.com
777 S. Flagler Drive, West Tower, Suite 1900
West Palm Beach, Florida 33401
Tel: (561) 833-2000

*Attorneys for Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on **December 6, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that I have served a copy to Respondent's counsel of record listed below.

By:    <u>s/*Suzanne Busser*</u>
                         SUZANNE BUSSER

Phillip J. Brutus, Esq.
Brutus Law Group
301 W. Atlantic Avenue, Suite 0-8
Delray Beach, FL 33444
Tel: 561-526-8383
Email: <u>info@brutuslawgroup.com</u>

#513741882_v2